UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AGUSTIN GALVAN MALDONADO (A-Number: 073-860-906),

Petitioner,

v.

TONYA ANDREWS, *et al.*,

Respondents.

Case No.  1:26-cv-1451-DJC-JDP

ORDER; FINDINGS AND RECOMMENDATIONS

Petitioner Agustin Galvan Maldonado entered the United States in 1993 and was detained by ICE in 2023.  Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c).  An immigration judge held a custody redetermination hearing and denied petitioner's release.  Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his detention, without another hearing, violates the Fifth Amendment.  For the reasons outlined below, I recommend that the petition be denied.

**Background**

Petitioner entered the United States in 1993, and he became a legal permanent resident in 1998.  ECF No. 10 ¶ 24.  In 2021, petitioner was convicted of drug possession, narcotic equipment possession, and carrying a concealed weapon.  ECF No. 10-5 at 2.  In 2022, petitioner was convicted of vehicle theft and aggravated assault.  *Id*.

1

In February 2023, petitioner was detained by ICE upon his release from local custody. *See id*. at 3; ECF No. 10 ¶ 28. In November 2024, petitioner was afforded a bond hearing, at which the immigration judge ("IJ") denied bond based on the finding that the government "established by clear and convincing evidence that [petitioner] is both a danger and a flight risk."[1] ECF No. 10-8 at 1. In May 2025, the Board of Immigration Appeals ("BIA") dismissed petitioner's appeal of the IJ's order, finding that the IJ "appropriately gave significant weight to [petitioner's] criminal history which reflected a trend of escalating seriousness and included convictions for possession of narcotics equipment, drug possession, carrying a concealed weapon, grant theft, and assault likely to cause great bodily injury." ECF No. 10-9 at 3-4. Moreover, the BIA held that while the IJ "recognized that [petitioner] has obtained sobriety and considered that [petitioner] submitted some evidence of rehabilitation," the IJ also "noted that these steps occurred in the detention setting." *Id*. at 4.

In November 2025, the IJ denied petitioner's request for a second custody redetermination hearing, finding that petitioner failed to demonstrate materially changed circumstances. ECF No. 10-10 at 1. It appears that petitioner did not appeal this order. *See* ECF No. 14 at 3.

Throughout his detention, petitioner's removal proceedings have been ongoing. Petitioner was ordered removed in April 2023. *See* ECF No. 10-6 at 2. Subsequently, the BIA remanded the proceedings to assess petitioner's competency, the IJ found petitioner mentally incompetent, and petitioner was provided with a qualified representative. *See id*. at 3; ECF No. 10-7. In July 2025, the IJ denied petitioner's applications for cancellation of removal, asylum, withholding of removal, and deferral of removal under the Convention Against Torture. ECF No. 10-11 at 1-2. Petitioner appealed this order, and his appeal remains pending before the BIA. *See* ECF No. 10-13 at 4. Separately, due to intervening authority from the Court of Appeals, petitioner filed with the BIA a motion to remand. *See id*.

---

[1] Petitioner alleges that he was provided a bond hearing where the government held the burden because he was designated as a class member of *Franco-Gonzalez v. Holder*, No. 10-cv-2211 (C.D. Cal.). ECF No. 10 ¶¶ 1, 12.

**Procedural History**

On February 19, 2026, petitioner filed a petition for writ of habeas corpus.  ECF No. 2.  Petitioner concurrently filed a request to seal documents pursuant to Local Rule 141.  ECF No. 7.  On that same day, the court referred the matter to me for further proceedings.  ECF No. 8.

On March 11, 2026, petitioner filed an amended petition and a request to seal documents pursuant to Local Rule 141.[2]  ECF Nos. 10 & 11.  On April 30, 2026, respondents filed an answer to the amended petition.  ECF No. 14.  On May 11, 2026, petitioner filed a reply.  ECF No. 16.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law.  *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

---

[2] Petitioner's requests to seal documents, ECF Nos. 7 and 11, will be denied.  There is "a strong presumption in favor of access to court records."  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).  "Accordingly, a party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the compelling reasons standard," under which "a court may seal records only when it finds a compelling reason and articulates the factual basis for its ruling, without relying on hypothesis or conjecture."  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096-97 (9th Cir. 2016).  In some circumstances, however, a party can satisfy the less stringent standard of "good cause" by "showing that specific prejudice or harm will result" if the documents are not sealed.  *See Foltz*, 331 F.3d at 1130.

Here, petitioner has not articulated any prejudice or harm that he faces—much less provided a compelling reason.  The documents are already restricted to case participants and the public terminal only.  Accordingly, I will order petitioner to file unredacted versions of all documents identified in ECF No. 11.

3

**Analysis**

Both parties agree that petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c).  *See* ECF No. 10 ¶ 1; ECF No. 14 at 6.  Petitioner claims that his detention violates the Fifth Amendment because he has not been provided a bond hearing since November 2024.  ECF No. 10 ¶¶ 122-25.  Respondents counter that petitioner's ongoing detention remains constitutional even in the absence of another bond hearing.  ECF No. 14 at 4-5.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  I consider each in turn.

Courts in this Circuit have held that a legal permanent resident ("LPR") has a protected liberty interest in not being detained by ICE.  *See Burton v. Larose*, No. 3:26-cv-2627-JES-BJW, 2026 WL 1256875, at *2-3 (S.D. Cal. May 7, 2026); *B.R. v. Warden*, No. 1:26-cv-0810-TLN-CSK, 2026 WL 1091489, at *2 (E.D. Cal. Apr. 22, 2026); *Amezcua v. Noem*, No. 5:26-cv-1070-SRM-AGR, 2026 WL 1048212, at *6 (C.D. Cal. Mar. 25, 2026).  Courts have come to these conclusions based on the breadth of case law finding that LPRs have protected liberty interests in maintaining ties with their community and remaining free from governmental restraint.  *See Amezcua*, 2026 WL 1048212, at *6 (collecting cases).  Notably, LPRs "do not lose their due process protections and liberty interest merely because they are subject to removal."  *Id*.  On the contrary, LPRs are "lawfully present in the United States until a final deportation or removal order is entered."  *Kyong Ho Shin v. Holder*, 607 F.3d 1213, 1217 (9th Cir. 2010).

I agree with other courts to have addressed this issue and find that petitioner has a protected liberty interest that accrued over the approximately twenty-five years between his attainment of legal permanent residency and his detention by ICE.  *See* ECF No. 10 ¶ 24.  Respondents do not argue to the contrary.  *See* ECF No. 14.  Moreover, because petitioner's removal order is not yet final, petitioner still has a protected liberty interest in remaining free from immigration custody.  *See Kyong Ho Shin*, 607 F.3d at 1217; *Amezcua*, 2026 WL 1048212,

4

at *6.

Once a court has found that a noncitizen has a liberty interest in release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Starting with the first factor, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. For approximately twenty-five years, petitioner was released in the United States under the supervision of ICE. *See* ECF No. 10 ¶ 24. Accordingly, I find that petitioner has a private interest in his continued release. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

However, as the Court of Appeals held in analogous circumstances, "it is important not to overstate the strength" of petitioner's showing under the first *Mathews* factor. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (9th Cir. 2022).[3] As in *Rodriguez Diaz*, because petitioner has received a bond hearing, he has not been "without process" during his detention. *See id*.

_____

[3] In *Rodriguez Diaz*, the Court of Appeals held that due process does not require that a second bond hearing be provided to a petitioner detained under 8 U.S.C. § 1226(a). 53 F.4th at 1213. Although the detention authority is distinct from the instant action, I find *Rodriguez Diaz* persuasive; that the Court of Appeals held that a second bond hearing was not required under section 1226(a)—which provides for *discretionary* detention—strongly suggests that a second bond hearing is not required under section 1226(c)—which provides for *mandatory* detention.

5

Moreover, as in *Rodriguez Diaz*, the court "cannot overlook that most of the period of [petitioner's] detention arose from the fact that he chose to challenge before the BIA . . . the IJ's denial of immigration relief."[4]  *See id*.  Thus, as the Court of Appeals held, the court "cannot simply count [petitioner's] months of detention and leave it at that."  *See id*. at 1208.  Rather, the court "must also consider the process [petitioner] received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order."  *See id*.

Turning to the second factor, petitioner has had the benefit of procedural safeguards to protect his liberty interest.  As noted, petitioner was afforded a bond hearing, at which the IJ denied bond based on the finding that the government "established by clear and convincing evidence that [petitioner] is both a danger and a flight risk."  ECF No. 10-8 at 1.  There is no argument or evidence to suggest that the bond hearing was conducted unfairly.  The BIA dismissed petitioner's appeal of the IJ's order, finding that the IJ "appropriately gave significant weight to [petitioner's] criminal history which reflected a trend of escalating seriousness and included convictions for possession of narcotics equipment, drug possession, carrying a concealed weapon, grant theft, and assault likely to cause great bodily injury."  ECF No. 10-9 at 3-4.  Then, in November 2025, the IJ denied petitioner's request for a second custody redetermination hearing, finding that petitioner failed to demonstrate materially changed circumstances.  ECF No. 10-10 at 1.  Although petitioner could have appealed this order, it appears that he did not do so.  *See id*. at 2.

"Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community."  *Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) (quoting *Zadvydas*, 533 U.S. at 690).  The procedures afforded to petitioner have "ensured that the risk of erroneous deprivation would be 'relatively small.'"  *See Rodriguez Diaz*, 53 F.4th at 1210 (9th

---

[4] Petitioner attempts to distinguish *Rodriguez Diaz* by asserting that he has been successful in an appeal.  *See* ECF No. 16 at 9.  The Court of Appeals did not cabin its holding to unsuccessful appeals.  Accordingly, I find this argument unpersuasive.

Cir. 2022) (finding that the petitioner's detention was "subject to numerous levels of review, each offering [him] the opportunity to be heard by a neutral decisionmaker").  Accordingly, I find that there is a low risk that petitioner's liberty interest was erroneously deprived, and thus this factor weighs in favor of respondents.  *See Espinoza v. Wofford*, No. 1:24-cv-01118-SAB, 2025 WL 1556590, at *13 (E.D. Cal. June 2, 2025) (finding that the risk of erroneous deprivation is "minimal" where the petitioner detained under § 1226(c) had a bond hearing before an immigration judge).

Lastly, regarding the third factor, the government "has an obvious interest in protecting the public from dangerous criminal aliens.  Through detention, the government likewise seeks to increase the chance that, if ordered removed, the aliens will be successfully removed." *Rodriguez Diaz*, 53 F.4th at 1208 (cleaned up).  Indeed, when Congress provided for mandatory detention under section 1226(c), it relied on evidence that "one out of four criminal aliens released on bond absconded prior to the completion of his removal proceedings" and that "after criminal aliens were identified as deportable, 77% were arrested at least once more and 45%—nearly half—were arrested multiple times before their deportation proceedings even began." *Demore v. Kim*, 538 U.S. 510, 518, 520 (2003).  Accordingly, I find that the government has a strong interest in detaining petitioner under section 1226(c) without holding a second bond hearing.

A consideration of the *Mathews* factors demonstrates that petitioner is not entitled to habeas relief.

### Conclusion

Accordingly, it is hereby ORDERED that:

1. Petitioner's request to seal documents, ECF No. 7, is DENIED.

2. Petitioner's request to seal documents, ECF No. 11, is DENIED.

3. Within seven days of this order, petitioner shall file unredacted versions of all documents identified in ECF No. 11.

Further, it is hereby RECOMMENDED that:

1. The amended petition for writ of habeas corpus, ECF No. 10, be DENIED.

2. The Clerk of Court be ordered to enter judgment accordingly and close this case.

7

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.


Dated:    June 29, 2026                                    _____
                                                          JEREMY D. PETERSON
                                                          UNITED STATES MAGISTRATE JUDGE

8